# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY BUTLER COMEGYS, | : | CIVIL NO.: 3:16-CV-00697 |
| | : | |
| Petitioner, | : | |
| | : | (Judge Mariani) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| DAVID EBBERT, | : | |
| | : | |
| Respondent. | : | |

## **REPORT AND RECOMMENDATION**

**I. Introduction.**

On April 27, 2016, Petitioner Anthony Butler Comegys ("Comegys"), an individual who was previously incarcerated at the United States Penitentiary Lewisburg Prison Camp in Lewisburg, Pennsylvania ("USP Lewisburg"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Comegys claims that he was wrongfully expelled from the Bureau of Prison's ("Bureau" or "BOP") Residential Drug Abuse Program conducted at that institution, thereby violating his right to early release under 18 U.S.C. § 3621.[1]

---

[1] Comegys is currently living at what appears to be a residential re-entry center. *See doc. 14* at 1 (listing his new address as "Community Solutions Inc." in Wilmington, Delaware).

For the reasons set forth below, we recommend dismissing his petition and closing the above-captioned case file.

**II. Background.**

On September 13, 2011, Comegys was sentenced in the United States District Court for the District of Delaware "to a 120 month sentence, and eight (8) year supervised release term," for "conspiracy to distribute 500 grams or more of cocaine" and "distribution of 500 grams or more of cocaine." *Doc. 5-2* at 1, ¶ 5. Comegys was subsequently incarcerated at USP Lewisburg. And, as stated above, the claims in Comegys's petition relate to his expulsion from the Residential Drug Abuse Program at that institution. *See doc. 1*.

The Residential Drug Abuse Program, which is more commonly referred to as the "RDAP," has three essential components.[2] *See* 28 C.F.R. § 550.53; *see also doc. 5-2* at 27. The first is a residential unit-based component, comprising of "a course of activities provided by drug abuse treatment specialists and the Drug Abuse Program Coordinator in a treatment unit set apart from the general prison population." 28 C.F.R. § 550.53(a)(1); *doc. 5-2* at 27. This component of the

---

[2] The federal regulations implementing the RDAP are codified at 28 C.F.R. § 550.53 (effective March 16, 2009 to May 25, 2016). Although the BOP subsequently repealed this regulation, it was in effect at all times pertinent to the instant petition. We note, however, that the current, comparable regulations, effective May 26, 2016, are also set forth at 28 C.F.R. § 550.53. We also note that the internal agency guidelines are found in "Program Statement 5330.11, Psychology Treatment Programs, dated March 16, 2009." *See doc. 5-2* at 6-67.

program "must last at least six months." 28 C.F.R. § 550.53(a)(1); *doc. 5-2 at 27*. If time allows between completion of this first component and transfer to a community-based program (i.e., the third component of the program), then the inmates must participate in follow-up services to the unit-based component. *Doc. 5-2 at 27; see also* 28 C.F.R. § 550.53(a)(2). These follow-up services, which constitute the second component of the RDAP, help to support the inmates while they transition back into general prison population. *See doc. 5-2 at 27; see also doc. 5 at 3*. Thus, inmates who have completed the unit-based component—and, when appropriate, the follow-up services component—are then transferred to a community-based program. 28 C.F.R. § 550.53(a)(3); *see also doc. 5-2 at 27*. Inmates "must successfully complete [the] community-based drug abuse treatment in a community-based program" in order to successfully complete the RDAP. 28 C.F.R. § 550.53(a)(3); *doc. 5-2 at 27*.

"[I]f an inmate refuses or fails to complete all aspects of the program, that prisoner fails the RDAP program and is disqualified from receiving additional incentives under the program." *Burt v. Lane*, No. 1:16-CV-1180, 2017 WL 4681807, at *2 (M.D. Pa. Apr. 4, 2017) (citing 28 C.F.R. § 550.56(a) (Carlson, M.J.), *report and recommendation adopted*, No. 1:16-CV-1180, 2017 WL 4647781 (M.D. Pa. Oct. 17, 2017) (Conner, C.J.). Some of those "incentives include financial awards, consideration for the maximum period of time at a community-

based treatment program, and local institution incentives, such as preferred living quarters." *Burt*, 2017 WL 4681807, at *2 (citing 28 C.F.R. § 550.54). And, "as a further incentive to encourage inmates to seek substance abuse treatment, Congress granted the BOP Director discretion to reduce the sentence of an inmate convicted of a non-violent offense who successfully completes the RDAP by a period not to exceed 12 months." *Burt*, 2017 WL 4681807, at *2 (citing 28 C.F.R. § 550.55). "There are, however, no guarantees that any particular prisoner will be enrolled in the RDAP program; will be permitted to complete the program; or will ultimately receive this sentence reduction." *Burt*, 2017 WL 4681807, at *2.

In this matter, Comegys's participation in the RDAP at USP Lewisburg has been fairly-well documented. Thus, for purposes of providing a complete and comprehensive Report and Recommendation, we briefly recount that participation here. On October 27, 2014, Comegys began the RDAP by entering, presumably, the first phase of the program—the unit-based component. *See doc. 5-2* at 2, ¶ 12. The parties do not seem to dispute the fact that Comegys successfully completed this first phase of the program.

Over nine months later, on August 4, 2015, Comegys entered the second phase of the program—the follow-up-services component. *Id.* at 2, ¶ 13; *see id.* at 90. But, approximately three months after entering this second phase, Comegys received his first formal warning (*id.* at 2, ¶ 14) for "engaging in aggressive

4

communication with other RDAP inmates, encouraging other RDAP participants not to engage in pull-ups,[3] [and] spreading negative comments about the RDAP" (*id.* at 92). This formal warning, which appears to have been signed by Comegys, identifies the interventions that were to be taken to address his behavior and states that if he failed to complete these interventions, as well as the RDAP treatment assignments that were being given to him, then these failures would result in his expulsion from the program. *Id.*

On the following day, however, Comegys continued to display unacceptable behavior, as documented by the RDAP staff. *See id.* at 93. More specifically, the staff commented that Comegys was "insinuat[ing] racially based insults against an RDAP participant[.]" *Id.* The staff also commented that this was Comegys's "second incident in the past week[,]" where he had "used derogatory racial statements about other black RDAP inmates who [were] actively engaged in treatment and active in the RDAP community." *Id.* As a result of this behavior, Comegys was scheduled to be seen by the RDAP staff at the next Treatment Team meeting. *Id.*

On November 16, 2015, Comegys was seen by staff. *See id.* at 2, ¶ 16; *see also id.* at 94. As reflected by the staff member's notes, Comegys, during that meeting, was "emotional" and gave the impression that he was "deflecting

---

[3] These "pull-ups" have not been defined for us.

responsibility" for his interaction with the other inmate and that he was taking a "victim stance." *Id.* As further reflected by the staff member's notes, Comegys was made aware of these impressions that he was giving to staff. *Id.*

Then, on November 17, 2015, Comegys received his second formal warning for continuing "to insinuate racially, inappropriate innuendos towards another RDAP participant." *Id.* at 95; *see also id.* at 2, ¶ 17. This warning informed Comegys that the RDAP Treatment Team had met to discuss his behavior and was concerned about his progress in the program. *Id.* at 95. This formal warning, which appears to have been signed by Comegys, again identifies the interventions that were to be taken to address his behavior and states that if he failed to complete these interventions, as well as the RDAP treatment assignments that were being given to him, then this failure would result in his expulsion from the program. *Id.*

On November 20, 2015, however, it became apparent to the RDAP staff during a community meeting that Comegys was "continuing to spread negativity and continuing to share statements and materials that [were] splitting his peers. [In addition, he was] continuing to foster the idea that he and his peers are not responsible for the crimes they committed." *Id.* at 99; *see also id.* at 2, ¶ 19. After the Chief Psychologist was consulted, Comegys was ordered out of the meeting. *Id.* at 99. It was also documented, at this time, that the "[a]dministration was

6

concerned that Comegys'[s] ongoing behavior would lead to unit-wide demonstration and/or riot." *Id.*

Consequently, just four days later on November 24, 2015, Comegys was expelled from the RDAP. *Id.* at 2, ¶ 20. Comegys was notified of his expulsion from the program and was, presumably, advised that as a result of his inability to complete the program, his early release status would be removed. *See, e.g.*, *id.* at 100, 105-06.

Thus, following his expulsion from the program, Comegys filed, on April 27, 2016, a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, arguing that he was wrongfully expelled from the RDAP and that this expulsion violated his right to early release under 18 U.S.C. § 3621(e) because he was "prevented . . . from going to the Halfway House on 01-05-2016." *Doc. 1* at 2, ¶ 5. In addition, Comegys argues that he was denied equal protection of the law when he lost his early release, that he was not allowed to return to general prison population after completing the first phase of the program, and that he was retaliated against by being expelled from the RDAP for writing two grievances against Dr. Ramirez. *Id.* at ¶ 13. As for relief, Comegys requests the Court to render a decision on the following three grounds: "1. The retaliation from staff so [he] may proceed with a *Bivens* Claim[;] 2. What should an inmate do if he is

being threaten [sic] by staff[; and] 3. If there is a mandate that should be followed once an inmate successfully complete [sic] Phase-One of the [RDAP.]" *Id.* at ¶ 15.

The Respondents contend, however, that the RDAP staff did not abuse their discretion in expelling Comegys from the program and that it was his own divisive and disruptive behaviors that led to his expulsion therefrom. *Doc. 5* at 11. In addition, the Respondents contend that Comegys's retaliation and conditions of confinement claims cannot be raised here, in this habeas corpus action, since they do not implicate the fact or duration of his sentence. *Id.* Finally, the Respondents contend that Comegys does not have a constitutionally protected right to participate in RDAP or to receive any of the incentives available for the completion of that program. *Id.*

## III. Discussion.

The imprisonment of persons convicted of federal crimes is governed by Title 18 U.S.C. § 3621. *Lopez v. Davis*, 531 U.S. 230, 233 (2001). Congress amended this statute in 1990 "to provide that '[t]he Bureau shall . . . make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.'" *Id.* (quoting Pub.L. 101–647, § 2903, 104 Stat. 4913). Then, "[f]our years later, Congress again amended § 3621, this time to provide incentives for prisoner participation in BOP drug treatment programs." *Lopez*, 531 U.S. at 233. "The

8

incentive provision at issue reads: 'The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve.'" *Id.* (quoting Pub.L. 103–322, § 32001, 108 Stat. 1897 (codified at 18 U.S.C. § 3621(e)(2)(B))). And, "[i]n 1995, the Bureau published a rule to implement the early release incentive." *Lopez*, 531 U.S. at 233 (citing 60 Fed.Reg. 27692–27695; 28 CFR § 550.58).

"However, while eligibility for early release under § 3621(e)(2)(B) is open to all prisoners who meet the statutory requirements, the statute expressly vests the BOP with broad discretion to grant or deny sentence reductions to eligible prisoners." *Carey v. Warden*, *FCI Allenwood-Low*, No. 1:17-CV-00500, 2017 WL 2288857, at *2 (M.D. Pa. May 25, 2017) (Kane, J.) (citing 18 U.S.C. § 3621(e)(2)(B)). Thus, enrollment in this program, and receipt of the benefits associated therewith, "is something consigned to the sound discretion of the [BOP]. [As such], inmate challenges [to] RDAP enrollment decisions in habeas corpus petitions, while frequently made, are rarely embraced by the courts." *Burt*, 2017 WL 4681807, at *5 (citation omitted); *see also id.* at *6 (providing the following reasons as to why federal courts have rejected federal habeas corpus petitions like the instant petition filed by Comegys: (1) "federal inmates have no constitutionally protected liberty interest in either RDAP participation or a

9

discretionary early release from custody following completion of the RDAP[;]" (2) "federal courts lack jurisdiction to review the BOP's individualized RDAP determinations made pursuant to 18 U.S.C. § 3621[;]" and (3) given the "broad discretion conferred by law upon the [BOP] in this field[,]" federal courts "have reasoned that only wholly arbitrary and capricious decision-making would present a colorable habeas corpus claim in this setting." (citations and quotations omitted)).

Guided by these governing principles, we conclude that this Court's federal habeas corpus jurisdiction does not extend to the instant petition. Indeed, United States District Court Judges from this District have previously reiterated this principle in similar federal habeas corpus actions, where the § 2241 petitioner requested review of the BOP's RDAP determinations made pursuant to 18 U.S.C. § 3621. *See, e.g.*, *Carey*, 2017 WL 2288857, at *3 (Kane, J.) ("[G]iven [the] BOP's authority to manage inmate drug treatment programs, including RDAP, any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court, and [t]he BOP's substantive decisions to remove particular inmates from the RDAP program are likewise not subject to judicial review." (quotations and citations omitted); *Bermudez v. Warden*, *FCI Allenwood-Low*, No. 1:17-CV-00519, 2017 WL 2473294, at *3 (M.D. Pa. June 8, 2017) (Rambo, J.) (finding that "the Court . . . does not have jurisdiction to consider

Petitioner's challenge to his preclusion from RDAP."); *see also Burt*, 2017 WL 4681807, at *7 (Carlson, M.J.) (expressing "substantial doubts" that federal habeas corpus jurisdiction extended to a § 2241 petition, where petitioner challenged his expulsion from the RDAP), *report and recommendation adopted*, 2017 WL 4647781, *1 (Conner, C.J.). And, in fact, on at least one occasion the United States Court of Appeals for the Third Circuit has similarly stated as follows:

> Next we consider whether Petitioner's request for relief[4] may invoke habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241. We believe the question here has been addressed by our decision in *Leamer v. Fauver*, 288 F.3d 532, 543 (3d Cir.2002), for two reasons. First, "[w]hatever the decision" on Petitioner's request for a transfer to have access to RDAP, his "release date will not change." *Id.* The opportunity here to participate in a program that carries with it only the potential for a discretionary sentence reduction is fundamentally different than incentive systems such as those in *Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), where an inmate was entitled to earn and redeem good behavior credits which directly impacted sentence length. Petitioner here seeks only " 'a ticket to get in the door' " of a drug treatment program that, even if completed to perfection, still affords the Bureau complete discretion to require Petitioner to serve his full sentence. *Leamer*, 288 F.3d at 543 (quoting *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir.1997)).
>
> Second, and more fundamentally, Petitioner does not contest the legality of his conviction, "the validity of the continued conviction[,] or the fact or length of a sentence." *Leamer*, 288 F.3d at 542. What is left is essentially a "condition of confinement" because the relief sought "would not alter [Petitioner's] sentence or undo his conviction." *Id.* at 544. As such, the district court lacked

---

[4] More specifically, the petitioner "claimed a right to be transferred so that he could attend RDAP." *Beckley v. Miner*, 125 F. App'x 385, 387 (3d Cir. 2005).

> jurisdiction under the habeas corpus statute to hear Petitioner's complaint. *Leamer*, 288 F.3d at 543; *see also DeWalt v. Carter*, 224 F.3d 607, 617 (7th Cir.2000) (concluding petitioner could not pursue habeas action where petitioner "did not challenge the fact or duration of his confinement, but only a condition of his confinement-the loss of his prison job").

*Beckley*, 125 F. App'x at 388.

But, even assuming that we had jurisdiction to entertain the instant petition, we would still conclude that it is subject to dismissal. Comegys contends that he was wrongfully expelled from the RDAP and that this expulsion violated his right to early release under § 3621(e), thereby preventing him from going to a halfway house on January 5, 2016. Pursuant to § 3621(e), however, an inmate may be entitled to early release only upon the successful completion of the drug treatment program. *See Bermudez*, 2017 WL 2473294, at *2. Thus, because Comegys was admittedly expelled from the program prior to the successful completion thereof, he was not entitled to early release under § 3621(e). *See id.* (finding that the § 2241 habeas corpus petitioner, who had been expelled from the institution's RDAP, was not entitled to early release under § 3621(e)); *Carey*, 2017 WL 2288857, at *2 (same).

Moreover, even if Comegys had not been expelled and had, instead, successfully completed the program, we would still conclude that he is not automatically entitled to early release. The statutory language of 18 U.S.C. § 3621

12

suggests that the BOP "may" reduce the sentence of a nonviolent offender after successful completion of a drug treatment program. 18 U.S.C. § 3621(e)(2)(B). Thus, "[w]hen an eligible prisoner successfully completes drug treatment, the Bureau . . . has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment." *Lopez*, 531 U.S. at 241; *see Beckley*, 125 F. App'x at 388 (stating that even if the RDAP is "completed to perfection," the BOP still has "complete discretion to require Petitioner to serve his full sentence." (citation omitted)).

And, finally, to the extent that Comegys's petition also raises claims of retaliation and conditions of confinement, we conclude that we are similarly without jurisdiction to entertain these claims. *See, e.g.*, *Roudabush v. Warden Fort DIX FCI*, 640 F. App'x 134, 136 (3d Cir. 2016) (affirming the district court's dismissal of a federal prisoner's habeas petitions due to a lack of jurisdiction because the prisoner's claims were based on conditions of confinement and, thus, had to be brought under *Bivens*); *Cohen v. Lappin*, 402 F. App'x 674, 676 (3d Cir. 2010) (affirming the district court's dismissal of a federal prisoner's habeas claims, which did not challenge the basic fact or duration of his imprisonment, and noting that the district court correctly determined that those claims should be brought in a *Bivens* action).

Accordingly, for all of the foregoing reasons, we recommend dismissing Comegys's petition for a writ of habeas corpus. We further recommend closing the case file.

## IV. Recommendation.

**IT IS RECOMMENDED** that the Court **DISMISS** the petition for a writ of habeas corpus (*doc. 1*) and close the case file.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **19th** day of **December, 2017**.

*S/Susan E. Schwab*
Susan E. Schwab
United States Chief Magistrate Judge
